FILED
CHARLOTTE, N.C.
1 7 2005
U.S. DISTRICT COURT
W. DIST. OF N.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:02CV57-V

| | |
|---|---|
| IN RE: ) | BANKRUPTCY CASE NO. 98-50517 |
| ) | CHAPTER 7 |
| JOHN ROBERT MULLINS, ) | |
| DEBTOR, ) | BANKRUPTCY ADVERSARY CASE |
| ) | NO. 00-5013 |
| BARRETT CRAWFORD, TRUSTEE, ) | |
| PLAINTIFF ) | |
| ) | |
| VS. ) | |
| ) | |
| JOHN ROBERT MULLINS, et al. ) | |
| DEFENDANTS ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION OF DEFENDANT STEVEN F. VICROY
## TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

Comes the movant, Defendant Steven F. Vicroy, and hereby submits a memorandum in support of the Motion to Dismiss or Alternatively, for Summary Judgment filed herewith, as follows:

### STATEMENT OF THE CASE

The claims of the Plaintiff in this particular action against the movant involve the allegations in numerical paragraph 125 of the Complaint and the allegations contained in the "Thirteenth Cause of Action" that includes numerical paragraphs 174 through 177. In essence, the Plaintiff alleges that the preparation of a trust agreement in 1990 was a part of a civil conspiracy between the movant and the Debtor to defraud the creditors of the Debtor. There have been no further allegations of the Plaintiff against the movant in any subsequent amendment to the Complaint.

As shown by the affidavit attached hereto, although the trust agreement described in numerical paragraph 125, hereinafter referred to as the "CRM II Trust", was drafted by the movant,

one of the many attorneys the Debtor has utilized in the past fifteen (15) years, the movant specifically recalls that after the tax review by separate counsel, movant recommended to the Debtor not to sign the document as drafted. The movant further has no recollection of any further communication with the Debtor concerning the trust agreement. There was already a trust agreement in place for Charles Robert Mullins so the movant assumed that, based upon the adverse tax advice given to the Debtor as well as the movant's recommendation not to sign the trust agreement, the Debtor never signed the trust agreement drafted by the movant. Movant further specifically recalls that the trust was never registered in the Commonwealth of Kentucky pursuant to KRS 386.650, <u>et seq.</u>, and had movant known that the CRM II Trust had been created, movant would have prepared and required the Debtor to sign the applicable registration documents required by that statute and would have directed the Debtor to obtain a federal tax identification number for the alleged trust..

Secondly, movant's affidavit evidences the fact that to the best of his knowledge and belief, movant had no personal knowledge of any debt owed by the Debtor at the time the trust document was drafted. Prior to the time the trust agreement was drafted, movant had never been involved in any litigation that resulted in a judgment against the Debtor personally, had never been involved in any transaction involving an individual debt of the Debtor and had never requested or seen a personal financial statement of the Debtor. To the best of movant's knowledge and belief, there is no evidence whatsoever in the record of this action that movant had any knowledge of any debt owed by the Debtor as of July, 1990.

By an order entered April 24, 2001, the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division, ruled that the claims of the Trustee against Gerald Dechow, another attorney that had represented the Debtor in the past, were violations of the Virginia

2

fraudulent conveyances laws and that the trustee had to power to allege a civil conspiracy to defraud creditors. A copy of that order is attached to the Brief in Support of Joint Motion to Dismiss of Defendants David Maynard, Susan Maynard, Stella Mullins Cranwell and William C. Cranwell as Exhibit "A". The Plaintiff has chosen not to amend the Complaint against the movant.

As for the remaining procedural background of this action, movant does not wish to inundate the record herein with a lengthy discourse which is aptly stated in the Brief in Support of Joint Motion to Dismiss of Defendants David Maynard, Susan Maynard, Stella Mullins Cranwell and William C. Cranwell and the Memorandum of Law in Support of Defendant Dechow's Motion for Summary Judgment. For the sake of brevity and judicial economy, the movant adopts reiterates and hereby incorporates by reference herein the Introduction, Background and Statement of the Facts contained in those pleadings.

## ARGUMENT

Movant contends that the Plaintiff lacks standing to bring the Thirteenth Cause of Action set forth in the Complaint herein against the movant. Furthermore, movant submits that the applicable law supports a dismissal or, alternatively, a summary judgment in his favor.

### I.

### THE PLAINTIFF LACKS STANDING TO BRING THE CLAIMS ALLEGED IN THE COMPLAINT AND DISMISSAL STANDS AS THE MOST APPROPRIATE REMEDY

Those Defendants that remain active in the defense of the claims brought by the Plaintiff in this action are all alleged to have been a part of a civil conspiracy with the Debtor, John Robert Mullins, to defraud his creditors. These allegations have been asserted by the Plaintiff generally on

3

behalf of the creditors of the Debtor. The movant submits to this Court that the Plaintiff lacks any standing whatsoever to assert these claims on behalf of the creditors of the Debtor.

      A.    THE DOCTRINE OF STANDING REQUIRES THIS COURT TO DETERMINE WHETHER PLAINTIFF HAS PROPERLY INVOKED THE JURISDICTION OF THIS COURT AND THE BANKRUPTCY COURT

Whether a Plaintiff has standing to pursue a cause of action, or in this case, multiple causes of action, requires this Court to examine both fundamental principles of the law as it relates to standing as well as current legal precedent interpreting the powers of a bankruptcy trustee. The movant believes that counsel for the Maynard and Cranwell defendants has aptly briefed the fundamental principles of standing to this Court and further, that this Court need not be given any lengthy discourse on those fundamental principles. The movant adopts, reiterates and incorporates by reference herein the standing arguments made by counsel for the Maynard and the Cranwell defendants in their Brief in Support of Joint Motion to Dismiss of Defendants David Maynard, Susan Maynard, Stella Mullins Cranwell and William C. Cranwell.

      B.    THE PLAINTIFF BANKRUPTCY TRUSTEE LACKS STANDING TO ASSERT CLAIMS FOR A CIVIL CONSPIRACY AGAINST THE MOVANT HEREIN

While the Bankruptcy Court previously ruled that the Plaintiff has standing to pursue a cause of action under Virginia law against Mr. Dechow[1], that Court has recently ruled, on more than one occasion, that a Chapter 7 bankruptcy trustee lacks standing to assert an action for civil conspiracy

---

[1] See Exhibit "A" to the Joint Motion to Dismiss of Defendants David Maynard, Susan Maynard, Stella Mullins Cranwell and William C. Cranwell

and other claims under North Carolina law on behalf of creditors of the Chapter 7 debtor.[2] In his most recent ruling on this point, Judge Whitley calls into question the continuing validity of the holding in *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987) and *St. Paul Fire v. Pepsico, Inc.*, 884 F.2d 688 (2nd Cir. 1989) upon which he heavily relied when addressing the Dechow motion back in April, 2001. These recent rulings clearly run contrary to Judge Whitley's reasoning in his April 24, 2001 ruling on that motion and call into question the standing of the Plaintiff to pursue the Thirteenth Cause of Action against the movant.

As counsel for the Maynards and the Cranwells aptly points out, Judge Whitley mentioned his ruling on Mr. Dechow's motion herein in his opinion in *In re Rehab Trust & Management Co., Ltd., supra,* and distinguished his ruling on the grounds that his decision on Mr. Dechow's motion was made on a claim under Virginia fraudulent conveyance law rather than a civil conspiracy claim[3]. Judge Whitley's ruling on Mr. Dechow's motion actually held the standing issue to be moot since the Trustee had the right to pursue fraudulent conveyance claims against Mr. Dechow under Virginia law. However, the Complaint herein only alleges a civil conspiracy against the movant and the Plaintiff has not sought to amend the Complaint against the movant or otherwise advise this Court that Plaintiff has changed its theory of recovery against the movant.

Based upon a prior ruling by this Court[4] and the recent rulings by Judge Whitley noted herein,

---

[2]*See Sigmon v. Esposito (In re Rehab Trust & Management Co.)*, No. 01-3182, 2002 Bankr. LEXIS 1876, *16-17 (Bankr.W.D.N.C. Mar. 4, 2002) and *see Mitchell v. Landex, Inc. (In re Burk)*, No. 02-31881 (Bankr. W.D.N.C. Mar. 1, 2005). A copy of the latter opinion is attached to the Brief in Support of Joint Motion to Dismiss of Defendants David Maynard, Susan Maynard, Stella Mullins Cranwell and William C. Cranwell as Exhibit "D".

[3]See *Rehab Trust,* 2002 Bankr. LEXIS 1876 at *15.

[4] *See In re Miller,* 197 B.R. 810, 815 (W.D.N.C. 1996)

5

movant contends that the standing issue remains justiciable, that the Plaintiff lacks standing to assert the Thirteenth Cause of Action against the movant and that this action should be dismissed. By reason of the Plaintiff's lack of standing to assert the Thirteenth Cause of Action against the movant, the movant submits that his motion to dismissed must be sustained. With Plaintiff having no standing to pursue this matter, this Court lacks subject matter jurisdiction over the claims and the Plaintiff cannot state a cause of action against the movant that may be pursued in any court. Standing involves the jurisdictional power of this Court to determine controversies and the movant may raise these issues at anytime in the proceedings. Therefore, this motion is ripe for adjudication. *See generally New Horizon of NY, LLC v. Jacobs,* 231 F.3d 143 (4th Cir. 2000).

### C. PLAINTIFF HAS FAILED TO PLEAD FRAUD WITH PARTICULARITY IN VIOLATION OF FEDERAL RULE OF CIVIL PROCEDURE 9(b)

Other than the specific allegation to the drafting of the trust agreement set forth in numerical paragraph 125 of the Complaint, the Plaintiff has failed to plead with particularity any other specific or overt act on the part of the movant that amounts to fraud or conspiracy to defraud the creditors of John Robert Mullins. F.R.C.P. 9(b) requires that a party plead fraud with particularity. As this Court has previously stated, the provisions of F.R.C.P. 9(b) mandate that:

> [a]llegations of fraud are subject to more exacting pleading requirements than are generally demanded by our liberal rules of notice pleading. Rule 9(b) of the North Carolina Rules of Civil Procedure provides in relevant part that: "In all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity. . . . "[I]n pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent act or representations." This formula ensures that the requisite elements of fraud will be pleaded with the specificity required by Rule 9(b).

*Synergy Financial, L.L.C. v. Zarro,* 329 F.Supp.2d 701 (2004) *citing DiFrega v. Pugliese,* 596

6

S.E.2d 456, 462 (2004). In the Complaint, the allegations in the Thirteenth Cause of Action state generally that movant "acted as his [Debtor's] surrogate and figure head, by accepting fraudulently transferred property, by allowing property to be fraudulently transferred and by allowing the Debtor to retain dominion and control over the fraudulently transferred property" and that movant "participated in the fraudulent scheme and committed one or more overt specific acts in furtherance of the scheme to defraud creditors". Complaint at ¶ 176 and 177.

There is no particularity in those allegations as to the time, place and content of any act and what property was obtained as a result of the fraudulent acts. The only particularity stated in the allegations of the movant rests in the allegations concerning the drafting of the trust agreement set forth in numerical paragraph 125. The Plaintiff has failed to plead any other act, representation or circumstance of fraud against the movant with the particularity required under Rule 9(b) or the holding of this Court in *Synergy Financial, L.L.C. v. Zarro, supra*. Any additional acts or claims that the Plaintiff may seek to establish at trial must be dismissed now for failure to plead the same with particularity. Furthermore, since the trial is only weeks away and the Plaintiff has had five (5) years to undergo discovery in this action, there is too little time for the Plaintiff to amend the Complaint to make any new allegations of fraud against the movant.

II.

SHOULD THIS COURT HOLD THAT THE
PLAINTIFF HAS STANDING TO PURSUE
A CIVIL CONSPIRACY CLAIM AGAINST
THE MOVANT, SUMMARY JUDGMENT
IN FAVOR OF THE MOVANT IS PROPER

Movant submits that there are no genuine issues of material fact with respect to the civil conspiracy claim and that movant stands entitled to judgment as a matter of law. Therefore, movant

contends that summary judgment in favor of the movant against the Plaintiff is proper.

    A.    THE FRAUDULENT CONVEYANCE LAWS OF THE COMMONWEALTH OF KENTUCKY FAIL TO PROVIDE A CAUSE OF ACTION AGAINST A PERSON NOT A PARTY TO THE ACTUAL CONVEYANCE DEEMED TO BE FRAUDULENT

The allegations against the movant set forth in the Complaint mirror the allegations against the Defendant Gerald Dechow except that the movant drafted a trust agreement and Mr. Dechow formed a limited liability company and a trust. That similarity may prompt this Court to rule that the Plaintiff has standing to bring the conspiracy to defraud creditors cause of action against the movant by ruling that the claim is actually one based on the theory of fraudulent conveyance as the Plaintiff contended in the hearing before Judge Whitley on the Dechow motion. Regardless, movant contends that this Court should grant movant summary judgment against the Plaintiff on the grounds that no geniune issue of fact exists and movant is entitled to summary judgment as a matter of law.

As the Bankruptcy Court has already ruled, application of the choice of law doctrine in this action requires that the allegations against this movant be based upon the laws of the jurisdiction in which the alleged actions took place. Should this Court concur with the reasoning of Judge Whitley in his April 24, 2001 order, then the claims against the movant should be examined under the fraudulent conveyance laws of the Commonwealth of Kentucky. The only action of the movant alleged in the Complaint with sufficient particularity took place in Kentucky. This action allegedly took place in 1990 and the applicable fraudulent conveyance law in Kentucky since that time stands codified in KRS Chapter 378 and rests in the interpretations given to that statute by reported decisions of the appellate courts of Kentucky.

Under Kentucky law, the only parties that have been held to be liable in an action alleging

8

a fraudulent conveyance are the parties to the conveyance.[5] In the case at bar, the only allegation against the movant is that he drafted a trust agreement that the Debtor, against the advice of movant and his tax counsel, then used as a vehicle to transfer assets which the Bankruptcy Court has ruled to be between alter egos of the Debtor. The movant's drafting of the trust agreement did not cause the movant to become a party to any conveyance of property, fraudulent or otherwise and therefore, under Kentucky law movant owes no liability to the creditors of the Debtor as the movant was never a party to any fraudulent transfer. Thus, even if the movant had taken the additional steps to form the trust, which the movant expressly denies, the formation of the trust did not constitute a fraudulent conveyance. The transfer of property into the trust by the Debtor or by an alter ego of the Debtor would constitute the conveyance. There is no allegation made with sufficient particularity which alleges that the movant transferred property to the trust or accepted property on behalf of the trust.

Additionally, Kentucky law only permits a personal judgment against a transferee in a fraudulent conveyance only to the extent of the value received. *See Bomanzi of Lexington, Inc. v. Tafel,* 415 S.W.2d 627, 631 (1967). The record herein clearly reflects that the Plaintiff has already recovered 100% of the assets of the alleged CRMII trust. As a result, even if movant had received any asset and transferred it to the alleged CRM II trust, that asset has since been recovered by the Plaintiff for the benefit of the creditors of the Debtor and movant's potential liability, which movant

---

[5]*See generally McKenzie v. Oliver,* 571 S.W.2d 102 (Ky.App. 1978); *Russell County Feed Mill v. Kimbler,* 520 S.W.2d 309 (Ky. 1975); *Bank of Josephine v. Hopson,* 516 S.W.2d 339 (Ky. 1974); *Bomanzi of Lexington, Inc. v. Tafel,* 415 S.W.2d 627 (Ky. 1967); *Trent v. Carroll,* 380 S.W.2d 87 (Ky. 1964); *Bertie Center and Inex May v. Stamper,* 318 S.W.2d 853 (Ky. 1958); *Bolling v. Adams,* 296 S.W.2d 696 (Ky. 1956); *Kincaid v. Brown's Estate,* 262 S.W.2d 468 (Ky. 1953); *Alt v. Burt,* 242 S.W.2d 974 (Ky. 1951); *Hardy v. Peoples State Bank & Trust Co.,* 312 Ky. 821, 229 S.W.2d 771 (1950) and *Morgan v. Hibbeard, Spencer, Bartlett & Co.,* 299 Ky. 57, 184 S.W.2d 218 (1944).

hereby expressly denies, would have been satisfied under Kentucky law. *Id.*

Since the movant was never a party to any fraudulent conveyance, movant has no liability to the Plaintiff for the acts of third parties that were parties to an alleged fraudulent conveyance. As such, movant stands entitled to judgment as a matter of law on the claims of fraudulent conveyance under Kentucky law.

      B.     KENTUCKY LAW FAILS TO RECOGNIZE
A CAUSE OF ACTION FOR CONSPIRACY
TO DEFRAUD SOMEONE'S CREDITORS

In applying the choice of law doctrine adopted by Judge Whitley, any claim for conspiracy to defraud creditors against the movant, as in the case of any claim for fraudulent conveyance, must be determined under Kentucky law. Kentucky has never recognized a cause of action for civil conspiracy to defraud creditors. The only Kentucky case located by movant which recognizes liability for a civil conspiracy involved an action to drive a business competitor out of business. *See Standard Oil Co. v. Doyle*, 118 Ky. 662, 82 S.W. 270 (1904). In that case, the then Court of Appeals of Kentucky ruled that a cause of action of civil conspiracy against an alleged defendant could only exist if the underlying actions of a particular conspirator were unlawful. Necessarily, that Court further held that if those underlying actions were lawful, then the facts alleged in the petition "did not state a cause of action". *Id.* At 272.

In applying that standard to the case at bar, the only facts in the record and the only facts the Plaintiff can establish with respect to the movant is that movant drafted a trust agreement which the Debtor, against legal advice from movant and tax counsel, apparently then formed and funded as the CRMII trust. The Plaintiff cannot establish any facts that movant did any further act to form or register this alleged trust, to obtain a tax identification number for this alleged trust, that movant

10

transferred or received any property on behalf of this alleged trust or that movant took any further action with respect to this alleged trust. The mere drafting of a trust agreement without further action to form, fund or otherwise conduct the business of this alleged trust in furtherance of the conspiracy is not an unlawful act.

Should this Court apply North Carolina law, the same conclusion rings true. In its decision in *Synergy Financial, L.L.C. v. Zarro, supra,* this Court held that "in North Carolina, there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct." *citing Byrd v. Hopson,* 265 F.Supp.2d 594, 599 (W.D.N.C. 2003). Since the actions of the movant in the mere drafting of a trust agreement do not constitute unlawful conduct in Kentucky or in North Carolina, no cause of action exists in the courts of North Carolina.

While the Plaintiff may argue that the Debtor, John Robert Mullins, may have acted in an unlawful manner by executing the trust agreement against the advice of counsel, by forming the alleged CRM II trust, by funding the alleged CRMII trust and by fraudulently transferring property into the alleged CRMII trust, none of those actions are attributable to the movant. The movant ceased any further action with respect to the trust agreement and the movant, as well as tax counsel for the Debtor, advised the Debtor not to form the alleged trust in question.

    C.    SHOULD THIS COURT DETERMINE THAT A CAUSE OF ACTION FOR CIVIL CONSPIRACY TO DEFRAUD CREDITORS EXISTS UNDER KENTUCKY LAW, THE MOVANT REMAINS ENTITLED TO A SUMMARY JUDGMENT

Movant submits to this Court that even if this Court were to hold that a cause of action for civil conspiracy to defraud creditors exists under Kentucky law, movant still stands entitled to a

11

summary judgment against the Plaintiff. First and foremost, even if a civil conspiracy to defraud creditors existed, the movant withdrew from that conspiracy and secondly, at the time the alleged trust agreement was drafted, movant had no personal knowledge whatsoever of any debts owed by the Debtor, John Robert Mullins.

As the affidavit attached hereto reflects, the movant recommended to the Debtor that the trust agreement movant drafted not be signed. This recommendation was made after the Debtor received advice from his tax counsel that the trust agreement would result in a grantor trust that would subject the Debtor to potentially adverse income tax consequences. From that point forward, the movant performed no further work to revise the trust agreement, to register the alleged trust, to obtain a tax identification number for the alleged trust, to fund the alleged trust or to otherwise validate the existence of the alleged trust. The lack of any further legal services performed by movant for the Debtor with respect to the trust agreement clearly show that even if there was a civil conspiracy initiated as Plaintiff alleges, which movant hereby unequivocably denies, the movant abandoned and withdrew from the conspiracy before the trust document was signed, before the alleged CRMII trust was funded and before any transfers into or from the alleged CRMII trust took place. Kentucky law mandates that a conspirator can withdraw and/or abandon a conspiracy prior to the overt act is taken to consummate the unlawful acts. *See Warren v. Commonwealth,* Ky., 333 S.W.2d 766, 768-769 (1960). Based upon the uncontroverted facts in the record, any civil conspiracy that may have existed between the movant and the Debtor ended when movant recommended to Debtor that he not sign the trust agreement and movant ceased to perform any services to form the trust. The actions of the movant clearly establish that he withdrew from and abandoned his involvement in such a conspiracy.

12

Case 5:02-cv-00057-RLV   Document 42   Filed 10/17/05   Page 12 of 20

Finally, the Plaintiff alleges these actions took place in 1990. Complaint at ¶ 125 and 63. As the affidavit attached hereto indicates, the movant had no knowledge whatsoever of any debt owed by the Debtor, John Robert Mullins, in 1990. The movant had performed legal services for Mr. Mullins as an associate attorney prior to that time and in July, 1990, had begun performing legal services for Mr. Mullins as a member of a law firm. However, at that time, the movant had never been involved in any litigation or any transaction in which a debt of the Debtor was alleged or was created. As of that time, the movant had never seen any financial statement of the Debtor or been involved in any form or fashion in the financial affairs of the Debtor.

Kentucky law, as discussed earlier, has never recognized a claim for civil conspiracy to defraud creditors. However, this Court may be prompted to rule that Kentucky may adopt such a cause of action if one were to be alleged since Kentucky long ago recognized a civil conspiracy with respect to an attempt to drive a business competitor out of business. *Standard Oil Co. v. Doyle, supra,* and Kentucky does recognize a cause of action for delaying, hindering or defrauding creditors. *Johnson v. Cormney,* 596 S.W.2d 23 (Ky.App. 1979). While movant believes that this Court should rule that no such cause of action exists in Kentucky and therefore leave any future determination as to whether Kentucky would recognize such a cause of action to the courts of the Commonwealth of Kentucky, the fact remains that this Court is being asked to apply Kentucky law.

In the event this Court chooses to determine that question, it appears to movant that the case law in the majority of jurisdictions that recognize such a cause of action similarly require a plaintiff to establish three elements of that cause of action. These elements generally include an agreement

13

between two or more persons to defraud creditors, to do an unlawful act and damages.[6] First and foremost, the Plaintiff will not be able to prove an agreement existed. As the affidavit attached hereto states, the trust was to be created for a particular purpose, and Plaintiff will not be able to produce any evidence of an agreement between the Debtor and movant to delay, hinder or defraud the creditors of the Debtor. Furthermore, the affidavit clearly establishes and the Plaintiff will not be able to produce any evidence that the movant had any knowledge of the Debtor's debts at the time the trust agreement was drafted. Finally, the only assets which the Complaint alleges became a part of the trust corpus was the stock in Sunset Management, Inc., the corporation that originally owned the business known as "Pure Gold", and membership interests in Vero Investments, L.C. Complaint at ¶64 and 77. The assets of these businesses were recovered by the Trustee under separate orders of the Bankruptcy Court.

The uncontroverted evidence in the record requires this Court to rule that there was no agreement between the Debtor and the movant to delay, hinder or defraud the creditors of the Debtor, that there was no illegal act or lawful act done for an illegal purpose as the only action taken by the movant was the drafting of a trust agreement which movant recommended not be signed by the Debtor and finally, the Plaintiff has already recovered the only asset alleged to have been transferred to the CRMII trust and as a result, the Plaintiff has no damages as it has recovered the only property that was ever transferred as a result of the alleged civil conspiracy.

---

[6]*See generally, Synergy Financial, L.L.C. v. Zarro, supra; Summers v. Hagen,* 852 P.2d 1165 (Ak. 1993) *citing McElhanon v. Hing,* 151 Ariz. 386, 728 P.2d 256 (1985); *Thompson Properties 119 AA 370, Ltd. v. Hide,* 897 So.2d 248 (Ala. 2004); *Future Group, II v. Nationsbank,* 324 S.C. 89, 478 S.E.2d 45 (1996); and *Trimble v. Pracna,* 51 S.W.3d 481 (Mo.App. S.D. 2001). These cases are purely representative of other cases from other jurisdictions which delineate the same elements of the cause of action.

14

Case 5:02-cv-00057-RLV Document 42 Filed 10/17/05 Page 14 of 20

## CONCLUSION

For all of the foregoing reasons, movant submits to this Court that dismissal of this action pursuant to F.R.C.P. 12(b)(1) and 12(b)(6) for lack of standing, lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted stand as appropriate under the applicable law. If the Court disagrees, then movant further submits that summary judgment should be entered on the Thriteenth Cause of Action as no genuine issue of material fact exists and movant stands entitled to judgment as a matter of law.

Respectfully submitted,

_____
STEVEN F. VICROY
1850 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507
Telephone: (859) 255-3371

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing was served by mailing the same via first class United States mail, postage prepaid, upon the following counsel or parties of record:

Hon. John W. Taylor
P. O. Box 472827
Charlotte, NC 28247

Hon. Richard M. Mitchell
Mitchell, Rallings & Tissue
227 W. Trade Street
Charlotte, NC 28202

Hon. R. Keith Johnson
600 Builders Building
312 West Trade Street
Charlotte, NC 28202

Hon. J. William Porter
Hon. Kiah T. Ford
3 Wachovia Center
401 S. Tryon Street, Suite 3000
Charlotte, NC 28202

15

Hon. John H. Culver III
Hon. J. Huntington Wofford
Kennedy, Covington, Lobdell & Hickman, LLP
47th Floor Hearst Tower
214 N. Tryon Street
Charlotte, NC 28202

Hon. Stephen J. Grabenstein
VanWinkle, Buck, Wall & Starnes
P. O. Box 7376
Asheville, NC 28802

Hon. David Lloyd Merrill
Cohen, Conway, Copeland, Paiva & Merrill
10 SE Central Parkway, Suite 400
Stuart, FL 34994-5903

Hon. Robert E. Price, Jr.
Robert E. Price, Jr. & Associates
P. O. Box 26364
Winston-Salem, NC 27114-6364

this October 12, 2005.

Steven F. Vicroy

16

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:02CV57-V

| | | |
|---|---|---|
| IN RE: | ) | BANKRUPTCY CASE NO. 98-50517 |
| | ) | CHAPTER 7 |
| JOHN ROBERT MULLINS, | ) | |
| DEBTOR, | ) | BANKRUPTCY ADVERSARY CASE |
| | ) | NO. 00-5013 |
| BARRETT CRAWFORD, TRUSTEE, | ) | |
| PLAINTIFF | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| JOHN ROBERT MULLINS, et al. | ) | |
| DEFENDANTS | ) | |

## AFFIDAVIT IN SUPPORT OF
## MOTION OF DEFENDANT STEVEN F. VICROY
## TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

Comes the Affiant, Steven F. Vicroy, and after first being duly sworn, states as follows:

1. That I am a regularly practicing attorney in the Commonwealth of Kentucky who holds Kentucky Bar No. 73045 and I am admitted to practice not only in the courts of the Commonwealth of Kentucky but also the United States Court of Appeals for the Sixth Circuit and the United States District Courts for the Eastern and Western Districts of Kentucky.

2. That as an associate attorney in the law firm of Murphy, King, Enlow & Dunn, I began practicing law in November, 1983.

3. That as a part of my employment during the late 1980's, I had occasionally performed legal services on behalf of Cecil F. Dunn, one of the partners of the aforesaid law firm, for John Robert Mullins, hereinafter referred to as "Mr. Mullins", and some companies that I believed he owned.

4. That these legal services primarily involved the leasing of certain real property in Lexington, Kentucky, and drafting organizational documents for a new corporation that Mr. Mullins decided to form to operate a business on the premises of that real property in Lexington, Kentucky.

5. That sometime in June, 1990, the law firm of Murphy, King, Enlow & Dunn dissolved and I became a member of the law firm then known as Murphy & Enlow.

6. That during this time, I specifically recall Mr. Mullins requesting that I draft a trust agreement for the benefit of his son, Charles Robert Mullins, which he wanted to form to permit him to make gifts in trust to his son that he did not want to give to the existing trust for Charles Robert Mullins that existed and held properties and assets in Virginia.

7. That although my recollection of the reasons for the separate trust is not all that clear, I believed that since Charles Robert Mullins was an illegitimate child who Mr. Mullins felt he had ignored for most of his son's life, Mr. Mullins wanted to make up for some lost time with his son.

8. That during this time, I prepared a trust agreement which reserved many powers to the Grantor as the Trustee of the proposed trust as requested by Mr. Mullins.

9. That, at my request, Mr. Mullins forwarded the trust agreement to Hon. Robert Briemann of the Street Law Firm in Grundy, Virginia, for a second opinion.

10. That shortly thereafter, I specifically remember that I was provided a copy of a letter to Mr. Mullins from Mr. Briemann that outlined that the trust agreement would be construed as a grantor trust by the Internal Revenue Service and that Mr. Mullins could face adverse income tax consequences by having the income of the trust assets imputed to Mr. Mullins as the grantor of the trust.

11. That after reviewing the copy of the letter from Mr. Briemann, I specifically recall

2

advising Mr. Mullins either in person or via the telephone not to sign the trust agreement.

12. That after that conversation with Mr. Mullins, I did not perform any other legal services to form the trust which the Plaintiff herein has designated the CRMII trust nor did I have any further communications with Mr. Mullins regarding this particular trust.

13. That had I been asked to perform any other services relating to the trust, I would have recommended that Mr. Mullins revise the trust agreement to amend the provisions concerning revocability, power over the appointment of a sucessor trustee and other provisions to avoid the trust being classified as a grantor trust by the Internal Revenue Service.

14. That had I been asked to perform any other services relating to the trust, I would have directed Mr. Mullins to register the trust under the law of the Commonwealth of Kentucky as required by KRS 386.650, *et seq.* and further, would have directed Mr. Mullins to obtain a federal tax identification number for the trust from the Internal Revenue Service.

15. That I never received any property to transfer into the CRMII trust nor did I ever possess, take title to or otherwise exercise any dominion or control over any asset held by the CRMII trust.

Further, Affiant sayeth naught.

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　STEVEN F. VICROY

3

COMMONWEALTH OF KENTUCKY

COUNTY OF FAYETTE

Subscribed and sworn to before me this 6th day of October, 2005, by Steven F. Vicroy.

My commission expires: 12/13/2007.

*Allen F. Nevius*
NOTARY PUBLIC, STATE AT LARGE, KY.

4